# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ALDRIDGE INDUSTRIES, INC.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:16-cv-01456-MHH** |
| | } | |
| **PRECISION TECHNOLOGIES,** | } | |
| **INC., and DAN LEE,** | } | |
| | } | |
| **Defendants.** | } | |

## ORDER

This case involves a dispute over payment for mining equipment that the parties installed in a plant in Chatsworth, Georgia.  Before the Court is defendant Dan Lee's motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  (Doc. 12).  Alternatively, Mr. Lee joins his co-defendant, Precision Technologies, Inc. (PTI), and asks the Court to dismiss this case for improper venue pursuant to Rule 12(b)(3).  (Doc. 12, p. 2).[1] Alternatively, both defendants ask the Court to transfer this case to the District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404.  (Doc. 12,

---

[1] PTI has answered Aldridge's complaint and filed a counterclaim against Aldridge for negligence and breach of contract.  (Doc. 5).  As its second affirmative defense, PTI asserted: "Venue is improper."  (Doc. 5, p. 2).

p. 3).  Plaintiff Aldridge Industries opposes the defendants' motions.  (Doc. 16).

The Court considers each motion in turn.

### PERSONAL JURISDICTION OVER DAN LEE

Pursuant to Rule 12(b)(2), Mr. Lee asserts that this Court may not exercise jurisdiction over him because he lacks minimum contacts with the Northern District of Alabama.  Mr. Lee is domiciled in Tennessee, and he is a corporate officer of PTI, a Tennessee corporation with its principal place of business in Englewood, Tennessee.  (Doc. 16, as amended by Doc. 22, p. 1).  Mr. Lee argues that his contacts with the Northern District of Alabama exist only by virtue of his work as PTI's representative.  He asserts that the Court cannot attribute PTI's contacts to him because he was acting as PTI's agent when he established business contacts in Alabama.  (Doc. 12, pp. 2, 6). [2]

To determine whether it has personal jurisdiction over an out-of-state defendant, a district court applies a two-prong test.  First, the court asks whether the state's long-arm statute confers jurisdiction over the defendant.  That is a question of law.  If the state's long-arm statute confers jurisdiction over the defendant, then the district court asks whether the defendant has sufficient contacts

---

[2] The Court's exercise of specific personal jurisdiction over PTI comports with due process because PTI purposefully conducted business in Alabama by reaching out to and contracting with an Alabama business and because that contract gives rise to the dispute in this lawsuit.  *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267–68 (11th Cir. 2010).

with the forum "to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (internal marks omitted); *see also Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).  That is a question of fact.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009)).  The district court must accept as true the allegations in the complaint unless a defendant challenges jurisdiction and offers evidence to contradict the plaintiff's allegations.  *Mosseri*, 736 F.3d at 1350; *see also Stubbs*, 447 F.3d at 1360.

"When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mosseri*, 736 F.3d at 1350 (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990)) (internal quotation marks omitted in *Mosseri*).  The burden does not return to the plaintiff "when 'the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Mosseri*, 736 F.3d at 1350 (quoting *Stubbs,* 447 F.3d at

1360). If the burden does shift back to the plaintiff, then the plaintiff must provide enough information concerning the nonresident defendant's contacts with the forum to withstand a motion for a directed verdict. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). A district court must view the jurisdictional evidence in the light most favorable to the plaintiff. *Meier*, 288 F.3d at 1269.

Accordingly, the Court begins the personal jurisdiction analysis with an examination of Alabama's long-arm statute. That statute permits courts within the state, including federal courts, to exercise jurisdiction to the full extent allowed by the Due Process Clause. *Frit Indus. Inc.*, 358 F.3d at 1319. Consequently, the Court must determine whether Aldridge Industries has established that Mr. Lee has sufficient minimum contacts with the state to satisfy due process. A defendant has sufficient minimum contacts with a forum when the defendant "purposefully avails [him]self of the privilege of conducting activities within the forum," and when "the defendant's contacts with the forum . . . relate to the plaintiff's cause of action or have given rise to it." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

The allegations in Aldridge Industries's complaint are of limited use in assessing Mr. Lee's contacts with this forum. Aldridge Industries alleges

conclusively that this Court may exercise jurisdiction over PTI and Mr. Lee because "[a]ll of the events or omissions giving rise to Aldridge Industries, Inc.'s claims occurred within the State of Alabama and, more particularly, within this judicial district." (Doc. 1, p. 2, ¶ 6). Aldridge Industries asserts that it is an Alabama corporation with its primary place of business in Madison County, Alabama. (Doc. 1, p. 2, ¶ 1, as amended by Doc. 22, p. 1, ¶6(a)). Aldridge Industries alleges that in January of 2014, it met with PTI, a Tennessee corporation that operates out of Englewood, Tennessee, "to discuss providing a company, Cimbar Performance Minerals [] with the tools, machinery, equipment and programming necessary to create a 'classifier disk' for equipment to be used in mining operations." (Doc. 1, p. 2, ¶ 7; Doc. 1, as amended by Doc. 22, ¶6(b)). Aldridge Industries contends that Dan Lee, a resident of Tennessee, "on behalf of PTI, approached Warren Aldridge and Aldridge Industries to assist in the sale of the equipment and finalizing the deal." (Doc. 1, p. 2, ¶ 9; Doc. 1, as amended by Doc. 22, ¶6(c)). The complaint does not indicate where these meetings took place.

According to Aldridge Industries, after the company agreed to collaborate with PTI on the project, PTI contracted with Cimbar for the sale and installation of mining equipment. (Doc. 1, p. 2). The contract price with Cimbar was $928,777. (Doc. 1, p. 3, ¶11). From that amount, Aldridge Industries was to collect commissions and be paid "for engineering and programming services required per

PTI purchase order number: PTI-12-1297." (Doc. 1, p. 3, ¶11). The complaint does not state where Cimbar is located or the extent to which Mr. Lee was involved in negotiations with Cimbar or the payments to Aldridge Industries.[3]

In support of his motion to dismiss, Mr. Lee submitted an affidavit in which he challenged Aldridge Industries's assertion that the events and omissions giving rise to the company's claims took place in Alabama. In his affidavit, Mr. Lee states that he is the president of PTI, that he resides in Tennessee, and that he never has resided in Alabama. (Doc. 12, p. 15).[4] Mr. Lee asserts that he has not entered a contract with Aldridge Industries relating to the Cimbar project, and he conducts no personal business in Alabama. (Doc. 12, p. 15). According to Mr. Lee, Mr. Aldridge, acting on behalf of PTI, submitted a quote to Cimbar for a lathe, a bridge mill, the engineering services reflected in purchase order PTI-12-1297, and a MasterCam package for the lathe and the mill. (Doc. 12, pp. 16, 19). Mr. Lee states that PTI placed the equipment order for the Cimbar project from Tennessee, and the equipment was installed in Georgia. (Doc. 12, p. 16). Mr. Lee adds that

---

[3] Because Aldridge alleges that "all of the events" that give rise to its claims against the defendants occurred here, the Court, viewing the allegations in the light most favorable to Aldridge Industries, could infer that the negotiations for and performance of the contract at issue occurred in Alabama in this district. Conclusory allegations like Aldridge's are suspect in light of the Supreme Court's decision in *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, the Court's analysis proceeds beyond the face of the complaint because the Court recognizes that it could allow the Aldridge Industries to amend its complaint to incorporate the facts that Mr. Aldridge provided in his affidavit. *See* pp. 13-14 below.

[4] Interestingly, Mr. Lee executed his affidavit in Louisiana. (Doc. 12, p. 17).

Mr. Aldridge agreed to perform the engineering work for the project in Georgia and that Mr. Aldridge made multiple trips to Georgia to fulfill the requirements of the Cimbar contract. (Doc. 12, p. 16). In his affidavit, Mr. Lee does not describe the extent of his contact with Alabama either individually or as an agent of PTI.

Aldridge Industries relies on the affidavit of Warren Aldridge, III to contradict Mr. Lee's assertions. Mr. Aldridge states that Mr. Lee "actually conducted business" in Alabama "on many occasions, specifically with Aldridge Industries, Inc. At one point in time, PTI was doing sufficient business at our location that Dan Lee requested we set aside a small office for his use." (Doc. 16-1, p. 1). Mr. Aldridge adds that "PTI actually kept a sign inside our building advertising their business, as well as had PTI literature and apparel onsite." (Doc. 16-1, p. 1). According to Mr. Aldridge, "PTI also conducted meetings, sales conferences and had other dealings with suppliers and potential customers in Alabama at our facility." (Doc. 16-1, p. 1).

Mr. Aldridge attributes the conduct that he describes in his affidavit to PTI, not Mr. Lee, but Aldridge Industries alleged in its second amended complaint that Mr. Lee is the alter ego of PTI. (Doc. 26, p. 1). In support of that allegation, Aldridge Industries relies on the affidavit of Rickey Dale Woods, "the Operations Manager for Aldridge Industries, Inc." Mr. Woods states that Dan Lee invited him to visit PTI's offices on Mr. Lee's farm in the fall of 2014 to train Mr. Lee and his

family to use accounting software. (Doc. 16-3, p. 1). Mr. Woods, having seen Mr. Lee's accounts and bookkeeping practices, concluded that Mr. Lee did not observe proper record keeping practices because "there was no separation between PTI accounts, Dan Lee's personal accounts, or [Dan Lee's] farm accounts." (Doc. 16-3, p. 1). Mr. Woods observed that Mr. Lee comingled personal and business accounts and that Mr. Lee did not treat PTI as a distinct entity for accounting purposes. (Doc. 16-3, p. 1).

Based on its assertion that PTI is Mr. Lee's alter ego, Aldridge Industries argues that the Court may exercise personal jurisdiction over Mr. Lee by piercing the corporate veil and attributing PTI's contacts with this forum to Mr. Lee. Under Alabama law, courts may pierce the veil separating corporations and shareholders in a limited set of circumstances. Those circumstances exist:

> "where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation."

*Claybar v. Huffman*, 54 F. Supp. 3d 1284, 1289 (S.D. Ala. 2014) (quoting *Econ Mktg., Inc. v. Leisure Am. Resorts, Inc.*, 664 So. 2d 869, 870 (Ala. 1994)).

> If a corporation is the alter ego of an individual, then the court may disregard the corporate form and exercise personal jurisdiction over

the individual. "[A]ttribution of contacts to the individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual."

*Ex Parte Puccio*, 923 So. 2d 1069, 1076 (Ala. 2005) (quoting *Home–Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990)).[5]

In his affidavit, Mr. Woods describes circumstances under which Alabama law permits courts to pierce the corporate veil. *See Claybar*, 54 F. Supp. 3d at 1289. The defendants ask the Court to strike the Woods affidavit. (Doc. 18). The

---

[5] In their submissions to the Court, the parties have not discussed choice of law issues. Mr. Lee cites Alabama law in his discussion of the relationship between himself and PTI. (Doc. 17, p. 3). Under Alabama law, the law of the forum state characterizes an issue for purposes of choice of law analysis. *Precision Gear Co. v. Continental Motors, Inc.*, 135 So. 3d 953 (Ala. 2013). The Court has not located an opinion from the Alabama Supreme Court or from the Alabama Court of Civil Appeals that discusses choice of law principles in conjunction with an alter ego analysis. If the Alabama Supreme Court were to characterize this jurisdictional issue as a matter of corporate law, then the law of Tennessee, PTI's state of incorporation, most likely would apply. *See generally Glock v. Glock*, 247 F. Supp. 3d 1307, 1320 n. 105 (N.D. Ga. 2017); *Canon Latin America, Inc. v. Lantech, S.A.*, 2011 WL 13101029 *13 (S.D. Fla. July 26, 2011). If, on the other hand, the Alabama Supreme Court were to view the issue as one incidental to Aldridge's breach of contract claim, then the Alabama Supreme Court would apply *lex loci contractus*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). Either Tennessee law or Alabama law would apply in that instance.

Tennessee law pertaining to piercing the corporate veil is very similar to Alabama law. Under Tennessee law, "[c]onditions under which the corporate entity will be disregarded vary according to the circumstances present in the case, and the matter is particularly within the province of the trial court." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 827 (Ct. App. Tenn. 2012)(internal marks and citations omitted). "Thus, the question of when an individual should be held liable for corporate obligations is largely a factual one." *Edmunds*, 403 S.W.3d at 828. "When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as a parent corporation or a controlling shareholder, where the two entities are in fact identical or indistinguishable and where necessary to accomplish justice." 403 S.W.3d at 829. The burden is on the party seeking to pierce the veil to prove the alter ego relationship, and courts must use the tool cautiously. 403 S.W.3d at 829; *see also Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.*, 908 S.W.2d 211 (Tenn. Ct. App. 1995). Because Alabama law and Tennessee law are similar in this regard, the Court's alter ego analysis would be the same under either authority.

defendants argue that Mr. Woods is not competent to testify on the state of PTI's accounts because Mr. Woods does not base his testimony on personal knowledge and because he does not offer his qualifications for giving an opinion on the accounts. (Doc. 18, pp. 2-3).

The Court is not persuaded by either argument. In his affidavit, Mr. Woods indicates that he is recounting his personal observations based on his visit to the PTI facilities on the Lee farm. Specifically, Mr. Woods states that he "observed transactions, invoices, payments, [and] account balances" while at the Lee farm. (Doc. 16-3, p. 1). Mr. Woods therefore has the requisite personal knowledge to make him a competent witness. *See* Fed. R. Evid. 602, 701, 703.

As for Mr. Woods's qualifications, he states that as Aldridge Industries's operations manager, he handles the company's "accounts, books, billing and other operational matters." (Doc. 16-3, p. 1). When Mr. Lee wanted instruction in the use of accounting software, he sought out the expertise of Mr. Woods. *Id.* Given Mr. Woods's sworn statement regarding his job duties, the Court is satisfied that he has the requisite experience to assess whether Mr. Lee co-mingled his personal accounts with PTI's business accounts. *See* Fed. R. Evid. 703; *see also U.S. v. Williams*, 865 F.3d 1328, 1338 (11th Cir. 2017) (noting that experts may be qualified to give testimony by virtue of their experience).

Finally, the defendants argue that what Mr. Woods may have observed in 2014 is not indicative of the current state of affairs at PTI. (Doc. 18, p. 4). This argument misses the mark. To answer the personal jurisdiction question, the Court must determine whether it can attribute PTI's contacts with the forum to Mr. Lee. PTI's relevant contacts are those that give rise to Aldridge Industries's lawsuit, namely PTI's contract with Aldridge Industries to provide mining equipment to Cimbar. Thus, the Court looks to the time when that contract was formed to assess whether PTI was Mr. Lee's alter ego. Aldridge alleges that PTI "engaged" Aldridge in the Cimbar project "around the spring of 2014" and that Cimbar agreed to an order in February 2015. (Doc. 1, p. 2). Mr. Woods states that he visited PTI's offices at the Lee farm in fall of 2014. (Doc. 16, p. 3). Thus, Mr. Woods's observations roughly coincide with the period of collaboration between PTI and Aldridge on the Cimbar project. For this reason, the Court rejects defendants' argument that Mr. Woods's observations do not bear on the jurisdictional inquiry, and the Court denies the motion to strike the Woods affidavit.

Based on the second amended complaint and the information in the Woods affidavit, the Court finds that Aldridge Industries has adequately established that the Court should pierce PTI's corporate veil. The Court attributes PTI's contacts with the Northern District of Alabama to Mr. Lee for purposes of establishing personal jurisdiction. Because PTI has sufficient contacts with this district for the

Court to exercise personal jurisdiction, these same contacts permit the Court to exercise personal jurisdiction over Mr. Lee. Therefore, the Court denies defendants' motion to dismiss this case as to defendant Dan Lee for lack of personal jurisdiction.

**VENUE**

**1. Venue in the Northern District of Alabama**

Mr. Lee and PTI argue that the Court should dismiss this case because the Northern District of Alabama is an improper venue. The defendants assert that neither PTI nor Mr. Lee is a resident of the state of Alabama, and "substantially all of the events" underlying this case "occurred in the state of Georgia." (Doc. 12, p. 8). The Court disagrees.

When a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(3), the plaintiff "must present only a prima facie showing of venue" to withstand the motion. *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (quoting *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)). To decide whether a plaintiff's chosen forum is proper, the Court may consider "factual allegations made in the plaintiff's complaint and supplemental evidence in the form of affidavits submitted by both parties." *Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc.*, 956 F.

Supp. 2d 1323, 1326–27 (M.D. Ala. 2012) (citing *Home Ins. Co.*, 896 F.2d at 1355). The plaintiff establishes the prima facie case for venue by showing that the "venue chosen is plausibly proper." *Goodwyn, Mills & Cawood*, 956 F. Supp. at 1327 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When the defendant introduces evidence conflicting with the plaintiff's showing, the Court views all allegations and evidence in the light most favorable to the plaintiff. *Goodwyn, Mills & Cawood*, 956 F. Supp. at 1327 (citing *Home Ins. Co.*, 896 F.2d at 1355).

The statute that provides the criteria for proper venue states that venue is proper in:

> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §§ 1391(b)(1)-(3). Aldridge Industries relies on § 1391's second basis for venue. (Doc. 1, p. 2). Aldridge Industries contends that it performed the majority of its contractual obligations in this district. (Doc. 16, p. 3). To support this argument, Aldridge Industries relies on the affidavit of Warren Aldridge and PTI's purchase order for the equipment that Aldridge was to ship to Cimbar.

(Docs. 16-2, 16-2).  According to Warren Aldridge, the company performed four of the five tasks listed in the Cimbar purchase order as well as the "unlisted job of designing and manufacturing of the fixture" at the company's facilities in Huntsville, Alabama.  (Doc. 16-1).  Mr. Aldridge explains that once Aldridge Industries completed its work in Alabama, Aldridge's "only job in Georgia was to actually put all the components together for the machining process."  (Doc. 16-1).  Aldridge Industries also points out that the only written evidence of a contract between the parties was sent by PTI to Aldridge's Huntsville location.  (Doc. 16, pp. 2-3; Doc. 16-2).

The defendants argue that a greater portion of the events and omissions relevant to this case took place in the Northern District of Georgia rather than in Alabama.  (Doc. 17, p. 4).  In his affidavit, Dan Lee states that Aldridge Industries's installation and programming of the equipment occurred in Georgia. (Doc. 12, p. 16).  In addition, Mr. Lee states that Warren Aldridge traveled to Georgia several times to perform this work and the equipment was never in Alabama. (Doc. 12, p. 16).  Although PTI's evidence conflicts to some extent with Aldridge Industries's characterization of its own performance, viewing the evidence in the light most favorable to Aldridge, Aldridge Industries offers enough support to make the Northern District of Alabama a plausibly proper venue.

Section 1391(2) requires only that a substantial part of the events or omissions giving rise to the claim took place in the district where the plaintiff chose to file the action. 28 U.S.C. § 1391(a). At the pleadings stage, the Court must treat Aldridge Industries's well-pleaded allegations as true. *Iqbal,* 556 U.S. at 679. Based on Aldridge Industries's factual allegations, the company completed a substantial portion of its performance in this district. Therefore, the Northern District of Alabama is a proper venue for this case.[6]

## 2. **Transfer to the Northern District of Georgia**

As stated, the defendants argue that at a minimum, this Court should transfer this action to the Northern District of Georgia. When venue is proper, a district court may transfer a case to another district if the parties persuade the court that another district is more convenient for the parties and witnesses or if a transfer is otherwise in the interests of justice. 28 U.S.C. § 1404(a). But a district court may transfer a case only to a venue where the plaintiff originally could have filed the action. *Id.* Therefore, the Court first must determine whether Aldridge Industries originally could have filed its lawsuit in the Northern District of Georgia.

Aldridge Industries alleges that it is an Alabama corporation with its principal place of business in Alabama and that PTI is a Tennessee corporation with its primary place of business in Tennessee. (Doc, 1; Doc. 22). Aldridge

---

[6] Even if venue were improper in this district, the Court could transfer the action to a proper venue rather than dismiss the action. 28 U.S.C. § 1406.

further alleges that Mr. Lee is a domiciliary of Tennessee. (Doc. 22). In the absence of evidence to contradict these assertions, the Court finds that the parties are completely diverse. As to the amount in controversy, Aldridge alleges that PTI owes $172,543.72 in fees and commissions under its agreement with PTI. (Doc. 1, p. 3). Because the parties are completely diverse and because there is more than $75,000 in controversy, the Northern District of Georgia would have subject matter jurisdiction over the case. *See* 28 U.S.C. § 1332. Thus, the only jurisdictional question is whether the Northern District of Georgia could have exercised personal jurisdiction over the defendants when the case was filed.

As discussed Dan Lee and PTI are Tennessee domiciliaries. As Tennessee domiciliaries, neither of the defendants is subject to general jurisdiction in Georgia. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). But by undertaking the project at issue in this case, the defendants made themselves subject to specific jurisdiction in the Northern District of Georgia. The defendants' reason for engaging Aldridge Industries's services was to enlist help for a project that PTI intended to undertake at the Georgia facilities of a Georgia corporation: Cimbar Performance Materials.[7] Through PTI's agreement with Cimbar and the work PTI

---

[7] Under Federal Rules of Evidence 201(b)(2) and (c)(1), the Court takes judicial notice of the fact that Cimbar Performance Minerals, Inc. is listed as a "domestic" corporation with its principal office in Chatsworth, Georgia on the Georgia Secretary of State's website. https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=431420&businessTyp e=Domestic%20Profit%20Corporation (last visited Dec. 12, 2017).

performed at Chatsworth, PTI purposefully established contacts with Georgia and availed itself "of the privilege of conducting business there."[8] *Burger King*, 471 U.S. at 475. Therefore, it was reasonably foreseeable that if PTI did not adequately perform its obligations in Georgia, PTI could face a lawsuit in Georgia, even if the suit was not brought by a Georgia entity. *Burger King*, 471 U.S. at 475 ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."). Thus, the defendants had sufficient contacts with Georgia to make them subject to specific jurisdiction in the Northern District of Georgia. Because the Northern District of Georgia would have had both subject matter jurisdiction over the case and personal jurisdiction over the parties, the Court concludes that Aldridge Industries originally could have filed this case in the Northern District of Georgia.

Although Aldridge Industries originally could have filed this case in the Northern District of Georgia, it chose to file in the Northern District of Alabama. Courts generally give deference to the plaintiff's choice of forum unless other considerations clearly outweigh that choice. *U.S. ex rel. Elder v. DRS Tech., Inc.*, 2013 WL 3151171, at *3 (N.D. Ala. June 14, 2013) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)). Therefore the burden rests with

---

[8] The Court can attribute PTI's connections with Georgia to Dan Lee for the same reasons it can attribute PTI's connections with Alabama to Dan Lee. *See* pp. 4-10 *supra*.

the defendants to persuade the Court that the relevant considerations indicate that the Northern District of Georgia is a more convenient and efficient forum in which to litigate this case. *See APR, LLC v. American Aircraft Sales Inc.*, 985 F. Supp. 2d 1298, 1303 (M.D. Ala. 2013).

To determine whether the defendants' proposed transfer is appropriate, the Court may consider a number of factors including:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (quotations and citations omitted). "The court must not apply these factors mechanically, but rather adjudicate motions to transfer 'according to an individualized, case-by-case consideration of convenience and fairness.'" *APR*, 985 F. Supp. 2d at 1303 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

To support their motion to transfer, the defendants rely on the first, second, and fourth factors listed above. Specifically, the defendants argue:

> that all documents relating to Aldridge Industrie, [*sic*] Inc.'s failure to perform under the contract exist in Chatsworth, Georgia; that all

payments relating to the contract were issued out of Georgia; that multiple witnesses familiar with the purchase, installation and programming of the equipment all exist in Georgia; and that all documents regarding the purchase, installation and programming of the machinery exist in Georgia.

(Doc. 17, p. 5). In his affidavit, Dan Lee explains that Cimbar's owner, its plant manager, and a Cimbar machine operator all can testify to Cimbar's difficulties with the equipment arising from the purported defects in Aldridge's performance. (Doc. 12, p. 16). Mr. Lee also indicates that Cimbar maintains records of the equipment failures, of Cimbar's complaints regarding the equipment failures, and of the company's payments under the contract at its Chatsworth facilities. (Doc. 12, pp. 16-17). The defendants also point out that the price of the work that Aldridge Industries performed in Alabama comprised only 8% of the total contract price of $928,777.00. (Doc. 17, p. 4; *see also* Doc. 12, p. 19). Although this fact may not render Aldridge Industries's choice of venue improper, it indicates that the locus of operative facts underlying this contract dispute lies outside of this district.

In its response to the motion to transfer, Aldridge Industries does not directly dispute these facts. Instead, Aldridge argues that it completed most of its contractual performance in Alabama. (Doc. 16, p. 3). The evidence Aldridge Industries offers in support of this argument is the same evidence the company used to support its argument for venue: Warren Aldridge's affidavit and PTI's purchase order. (Docs. 16-1, 16-2). The Court accepts that Aldridge Industries

undertook a substantial amount of its contractual performance at its Huntsville facilities. Aldridge Industries, however, could not render complete performance as contemplated by the parties until it had completed production of the turbine components and installed the finished equipment, both of which Aldridge Industries had to do at Cimbar's Chatsworth, Georgia facility. (Doc. 16, p. 3). Aldridge Industries does not argue that the information pertaining to the quality and acceptability of the work performed by either party is available in this district. Aldridge Industries does not point to any other factors that weigh in favor of litigating the case in this Court. The defendants, by contrast, have pointed to several factors indicating that the parties can more easily access information necessary to resolve their dispute if the Court transfers this case to the Northern District of Georgia. The Court concludes that the defendants have met their burden, and, therefore, the Court will transfer this case to the District Court for the Northern District of Georgia.

## IV. CONCLUSION

For the reasons stated above, the Court grants the defendants' motion in part and transfers this case to the District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404.

**DONE** and **ORDERED** this February 2, 2018.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE